# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

CCT SCIENCES, LLC, a Florida
limited liability company,

    Plaintiff,

v.                                                        Case No.: 8:26-cv-00059

VERTOSA, INC., a Delaware
corporation,

    Defendant.

_____/

## PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, CCT SCIENCES, LLC ("CCT"), by and through its undersigned counsel, sues Defendant, VERTOSA, INC. ("Vertosa"), and alleges as follows:

## NATURE OF THE ACTION

1. This is an action for false advertising, unfair competition, and related misconduct arising under the Federal Lanham Act, 15 U.S.C. § 1125(a).

2. Vertosa has engaged in a systematic false advertising campaign, misrepresentation, and deceptive practices regarding its so-called "natural hemp-derived Δ9 THC," misleading customers, regulators, and market participants into believing its THC ingredient is created through a "natural process" from hemp-derived CBD distillate or CBD mother liquor, also referred to as the "input material", resulting in harm to consumers and businesses, such as CCT.

3. Vertosa sells and distributes Delta 9-THC emulsions and other cannabinoid products derived from hemp or marijuana. It engages in the distribution of said products, amongst other ways, by way of its website (http://www.vertosa.com).

4. In reality, substantial analytical, operational, economic, and biochemical evidence shows that Vertosa's Delta 9- THC material is not hemp-derived, not produced through the process Vertosa claims, and is instead sourced from or adulterated with cannabis-derived Delta 9-THC—a materially different and federally regulated substance. See attached hereto as **Exhibit 1** is the Affidavit of Dr. Harold Meckler in support of this Complaint and the claims made herein.

5. Vertosa's false claims have caused and continue to cause significant damage to CCT, which supplies genuine hemp-derived products, competes directly in the national cannabinoid market, and is harmed by Vertosa's deceptive representations, market distortion, and unfair price competition.

## JURISDICTION, PARTIES, AND VENUE

6. This Court has subject-matter jurisdiction under: 28 U.S.C. 1331 (federal question—Lanham Act); 28 U.S.C. 1338(b) (unfair competition joined with Lanham Act); 15 U.S.C. § 1121 (Jurisdiction of Federal Courts); and 28 U.S.C. 1367 (supplemental jurisdiction for related state-law claims).

7. CCT is a Florida limited liability company registered to do business in the state of Florida with its principal place located in Pinellas County, Florida.

8. Vertosa is a Delaware corporation who does substantial and continuous business in the state of Florida such that Vertosa is subjected to the jurisdiction of this Court.

9. Defendant has, upon information and belief, sold and distributed cannabinoids derived from marijuana, a controlled substance, in Pinellas County, Florida in violation of state and federal laws as more particularly set forth below.

10. Venue is proper in the Middle District of Florida under 28 U.S.C. 1391 because Vertosa does business in this District; a substantial part of the events and deceptive conduct occurred, and occurs, in this District, and CCT, a Florida liability company, suffered injury in this District.

## FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

11. CCT is in the hemp-derived cannabinoid business and focuses on research, development, analytics, and the production of legal Delta 8 and Delta 9 derived from industrial hemp.

12. CCT is dedicated to ensuring a compliant industry that supplies and holds out for consumption, safe legal products for consumers.

13. CCT is the inventor of a process through which compliant Delta 8-THC and Delta 9-THC products derived from hemp can be produced at scale, and it has been granted four U.S. patents related thereto:

    a. Patent No.: US 11,292,779 B1 (Date of Patent: Apr. 5, 2022) for the Process for Production of Essentially Pure Delta 8-Tetrahydrocannabinol from Cannabidiol Extracted from Hemp. A true and correct copy of this patent is attached hereto as **Exhibit 2**;

    b. Patent No.: US 11,753,390 B2 (Date of Patent: Sep. 12, 2023) for Delta-8-Tetrahydrocannabinol from Cannabidiol Extracted from Hemp. A true and correct copy of this patent is attached hereto as **Exhibit 3**;

    c. Patent No.: US 12,029,718 B2 (Date of Patent: Jul. 9, 2024) for Process for Production of Essentially Pure Delta-9-Tetrahydrocannabinol. A true and correct copy of this patent is attached hereto as **Exhibit 4**; and

    d. Patent No.: US 12,458,620 B2 (Date of Patent: Nov. 4, 2025) for Process for Production of Essentially Pure Delta 9-Tetrahydrocannabinal. A true and correct copy of this patent is attached hereto as **Exhibit 5**.

14. CCT invested substantial time, effort, and funding into developing the technologies necessary to manufacture state and federally compliant Delta 8- and Delta 9-THC products, and it licenses these technologies.

15. CCT is dedicated to securing and safeguarding reputable and reliable production and manufacturing practices throughout this industry.

*Federal Law*

16.     The 2018 Federal Farm Bill (the "Farm Bill") was a bipartisan piece of legislation that provided funding and programs to support farmers, ranchers, and other landowners and, in relevant part, that legalized the production and sale of industrial hemp.

17.     The Farm Bill amended the Controlled Substances Act (CSA, 21 U.S.C. 802(16)) to exclude hemp from the statutory definition of marijuana.

18.     However, for hemp to be excluded from the CSA, it must contain no more than a 0.3% concentration of delta-9 tetrahydrocannabinol (THC), which is marijuana's primary psychoactive chemical, thus removing hemp from the CSA and from being regulated as a Schedule I drug.

19.     That provision effectively legalized the cultivation, processing, marketing, and sale of hemp and any cannabinoid if it is derived from hemp that is produced by a licensed grower and otherwise produced in a manner that is consistent with the Farm Bill.

20.     Thus, leaving all other cannabis-derived products produced in any other setting as Schedule I substances under the federal law and are thus subject to the CSA's most strict regulations.

21.     The Farm Bill makes it legal to possess, manufacture, and distribute only cannabinoids, such as cannabidiol (CBD), extracted from all sativa L. plants

that meet the definition of "hemp." thus making CBD legal when it is extracted from parts of the cannabis plant which Congress excluded from the definition of marijuana.

22. Said simply, while both hemp and marijuana are varieties of the Cannabis Sativa L. plant, only hemp-derived cannabinoid products with less than 0.3% THC are legal federally, whereas marijuana-derived products are not.

*Vertosa's Marketing Claims*

23. Per Vertosa's website it makes shelf-stable emulsified cannabinoids for beverages and edibles.

24. Vertosa purports to create "safe THC emulsions from 'mother liquor,'" which is derived from the production and isolation of CBD.

25. Vertosa advertises that its Delta 9-THC ingredient is: produced through a natural process, enriched using "column chromatography," is free from "synthetic byproducts," and is derived from hemp-based CBD mother liquor.

26. Vertosa, in its chain of custody document, describes its process as relying on CBD distillate as a precursor material.

27. Vertosa further claims that its process "avoids the risks associated with conversion materials" and that the resulting Delta 9 is "natural hemp-derived."

*Vertosa's Chain of Custody Contradicts Its Advertising*

28. Vertosa's own chain of custody documents reveal that it receives CBD distillate from a supplier called Remedy Processors.

29. Remedy's Certificate of Analysis (COA) for the input CBD distillate shows: CBDv at 0.505% and THCv not detected.

30. Remedy's COA for the THC distillate supplied to Vertosa shows: THCv at 0.584% and CBDv not detected.

31. This cannabinoid profile is inconsistent with hemp-derived CBD distillate and is entirely consistent with cannabis-derived THC distillate.

32. The presence of THCv in the final distillate contradicts the assertion that CBD distillate was the starting material, because CBD distillate does not contain THCv.

33. These results are inconsistent with any normal chromatographic process and indicate that the material's origin is not hemp as is claimed by Vertosa.

*Impossibility of Vertosa's Claims*

34. Column chromatography produces low output, and is very expensive due to solvent, media, labor, and waste costs.

35. By way of reference, CBD distillate with only 2.17% THC requires approximately 50 kg of input to yield 1 liter of mother-liquor Delta 9—even assuming impossible 100% efficiency.

36. At an industry-low cost of $80/kg, the CBD input alone costs approximately $4,000, and that's before the solvents, labor, column media, overhead, and disposal.

37. Yet Vertosa was purchasing "natural hemp-derived Delta 9" at $1,400/kg in 2024 and the market price in 2025 was around $1,200/kg.

38. These numbers are economically impossible if the Delta 9 were actually derived from CBD distillate as Vertosa claims.

39. However, the prices perfectly match the market price for cannabis-derived distillate, which routinely sells for $800-$1,000/kg.

*Analytical Evidence of Cannabis Origin*

40. CCT's review of Remedy's materials and Vertosa's emulsion revealed that the THCv content is consistent with cannabis-derived material, that there are minor cannabinoid shifts inconsistent with CBD-derived material, that the aroma and color matches cannabis-derived Delta 9 distillate, and that the potency profiles are indistinguishable from cannabis-source Delta 9. See **Composite Exhibit 6** attached hereto.

41. Undoubtedly, none of the cannabinoid patterns match CBD distillate-derived material, even when accounting for normal chromatographic shifts.

42. The analytical results can only be explained by Vertosa using, or at minimum, mixing in cannabis-derived Delta 9-THC, while marketing said product as hemp-derived and "natural."

*Illegal Conduct*

43. Vertosa is engaged in the business of distributing and dispensing Delta 9-THC and other concentrates and products derived from cannabis, or marijuana (THC), which is a direct violation of the law.

44. Vertosa is distributing water soluble emulsions of cannabinoid products that, while they may formulate final beverages containing THC levels that are below the prescribed (<0.3%) amounts, such products were derived from marijuana/cannabis and not hemp, which results in those products being illegal.

45. Vertosa claims its products are legally derived from hemp biomass, however, those are false representations or claims, and Vertosa knows such claims and representations are false.

46. Specifically, Vertosa claims on its website that its products are legally derived from "mother liquor" which is a product left over after CBD crystallization, and markets its ability to enrich the THC content of the mother liquor with column chromatography, which is not a scalable solution that would meet the requirements of its THC consumption.

47. Vertosa knows its mother liquor product, or products, are not actually mother liquor from hemp but rather originate from cannabis oil rather than hemp, based on observed cannabinoid profiles.

48. Vertosa also knows its mother liquor product, or products, are high in THCv, which is a direct by-product of cannabis, or marijuana.

49. When oil is extracted from marijuana plants, it results in a distillate that is high in Delta 9-THC, with small amounts of THCv being seen as the primary "varin" by-product.

50. Alternatively, hemp flowers are high in CBD, and when oil is extracted from a hemp plant, the result is a distillate that creates small amounts of CBDv as the primary "varin" by-product.

51. Vertosa's products that it is distributing, and that it distributed to Plaintiff, contain the by-product THCv, along with non-detectable amounts of CBDv, evidencing that it is derived from cannabis and not hemp as advertised.

52. Because Vertosa's products that it is distributing, and that it distributed to Plaintiff, was derived from cannabis, it is illegal and a controlled substance, and distribution thereof is illegal.

*Market Impact and Harm*

53. Vertosa's false and fraudulent claims mislead customers and consumers into purchasing cannabis-derived Delta 9 that is falsely advertised as

hemp-derived, purported to be "natural," represented as produced through chromatography, and priced artificially low due to deceptive sourcing.

54. These false representations directly harm CCT by distorting fair market competition, undercutting genuine hemp-derived Delta 9 products, diverting customers and consumers based on deceptive claims, and damaging CCT's competitive position and reputation in the industry.

55. By engaging in illegal conduct, Vertosa obtains an unfair competitive advantage over CCT and its licensees in the marketplace, causing CCT to suffer damages through lost and decreased royalties, lower market share, and lower profits. Thus, because Vertosa falsely represents that its products are hemp-derived when, in fact, they are illegal marijuana, Vertosa's actions have the effect of tarnishing the entire industry, causing loss of consumer confidence in the lawful products sold by CCT and its licensees and additional regulatory scrutiny in the market.

56. Further, CCT is being directly harmed by Vertosa's intentionally deceptive marketing scheme which is targeted at CCT's patented products and reputation.

57. Vertosa's action constitute false advertising, misrepresentation, and unfair competition.

58. Plaintiff has engaged the undersigned attorneys to prosecute this action on its behalf and is obligated to pay them a reasonable fee.

59. All conditions precedent to this suit have been performed, have occurred, or have otherwise been satisfied or waived.

## COUNT I
## LANHAM ACT FALSE ADVERTISING – 15 U.S.C. § 1125(a)(1)(B)

60. Plaintiff realleges and incorporates the allegations set forth in paragraphs 1 through 59, by reference, as though fully set forth herein.

61. Vertosa has made materially false and misleading statements and claims in commercial advertising, including that:

    a. Its Delta 9 THC is "natural";

    b. It is derived from hemp-based CBD distillate;

    c. It is produced through chromatography; and

    d. That it is compliant with federal definitions and laws regarding hemp.

62. These statements deceive, or are likely to deceive, a substantial portion of consumers and materially influence purchasing decisions.

63. Vertosa's misrepresentations have caused direct injury to CCT's commercial interests and have caused CCT competitive injury.

WHEREFORE Plaintiff, CCT SCIENCES, LLC, demands judgment against Defendant, VERTOSA, INC., for damages to be determined, injunctive relief,

disgorgement of profits, together with attorneys' fees, costs, prejudgment interest, and such further relief as this Court deems just and proper.

## COUNT II
## LANHAM ACT UNFAIR COMPETITION – 15 U.S.C. § 1125(a)

64. Plaintiff realleges and incorporates the allegations set forth in paragraphs 1 through 59, by reference, as though fully set forth herein.

65. Vertosa has engaged, and continues to engage, in unfair competitive practices by falsely characterizing cannabis-derived Delta 9 as hemp-derived, thereby unlawfully competing against compliant producers in the industries like CCT.

66. As a direct result of Vertosa's actions, CCT has suffered, and continues to suffer damages and commercial and competitive injury.

WHEREFORE Plaintiff, CCT SCIENCES, INC., demands judgment against Defendant, VERTOSA, INC., for damages to be determined, injunctive relief, disgorgement of profits, together with attorneys' fees, costs, prejudgment interest, and such further relief as this Court deems just and proper.

## COUNT III
## COMMON LAW UNFAIR COMPETITION

67. Plaintiff realleges and incorporates the allegations set forth in paragraphs 1 through 59, by reference, as though fully set forth herein.

68. Florida common law unfair competition is a broad and flexible doctrine designed to prevent competitors from gaining an unfair advantage through deceptive or fraudulent business practices.

69. Vertosa has engaged, and continues to engage, in fraudulent, misleading, and deceptive conduct by falsely characterizing cannabis-derived Delta 9 as hemp-derived.

70. Vertosa's conduct constitutes a deliberate effort to mislead consumers, retailers, distributors, and regulators regarding the true nature, legality and origin of its product.

71. Vertosa's actions as alleged and incorporated herein divert sales, market share, and business opportunities away from CCT, who competes in the same market and adheres to all applicable legal requirements.

72. Vertosa's actions were, and are, willful, and intentional and undertaken with full knowledge of its product's true origin and that representing it as something else would cause harm to lawful competitors like CCT.

73. As a direct result of Vertosa's past and continuing actions, CCT has suffered, and continues to suffer damages and commercial and competitive injury.

WHEREFORE Plaintiff, CCT SCIENCES, LLC, demands judgment against Defendant, VERTOSA, INC., for damages to be determined, injunctive relief,

punitive damages, together with attorneys' fees, costs, prejudgment interest, and such further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff requests trial by jury on all issues so triable.

DATED: January 9, 2026

                                          Respectfully submitted,

                                          */s/ Kyle D. Bass*
                                          Kyle D. Bass (FBN 122158)
                                          **Weber, Crabb & Wein, P.A.**
                                          5453 Central Avenue
                                          St. Petersburg, FL 33710
                                          Telephone: (727) 828-9919
                                          Facsimile: (727) 828-9924
                                          Kyle.Bass@webercrabb.com
                                          Secondary:
                                          honey.rechtin@webercrabb.com
                                          natalie.deacon@webercrabb.com
                                          *Attorney for Plaintiff, CCT Sciences, LLC*